OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

April 22, 2002

Mr. Felipe Alanis
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. JC-0492

Re: Whether, with respect to a contract valued at $25,000 or more in the aggregate for a twelve-month period, a school district may participate in a registered political subdivision corporation created under section 304.001 of the Local Government Code, and related questions (RQ-0453-JC)

Dear Mr. Alanis:

Section 44.031 of the Education Code provides an exclusive list of methods by which a school district may enter a contract valued at $25,000 or more in the aggregate for a twelve-month period. *See* TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2002). Section 304.001 of the Local Government Code authorizes political subdivisions generally to aggregate to "form a political subdivision corporation . . . to act as an agent to negotiate the purchase of" or to purchase electricity. TEX. LOC. GOV'T CODE ANN. § 304.001(b), (d) (Vernon Supp. 2002). With respect to a contract valued at $25,000 or more in the aggregate for a twelve-month period, your predecessor asked whether a school district may authorize a registered political subdivision corporation, on behalf of the school district, to "negotiate . . . and enter into a contract for electricity or other utility services."[1] Chapter 304 of the Local Government Code does not expressly include school districts in its definition of "political subdivision." *See id.* § 304.001(a). Moreover, section 44.031 of the Education Code does not list a method that would encompass the negotiation or purchase of electricity using a political subdivision corporation formed under section 304.001 of the Local Government Code. *See* TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2002). We accordingly conclude that with respect to a contract valued at $25,000 or more in the aggregate for a twelve-month period, a school district may not participate in a political subdivision corporation.

Your predecessor also asked, as we understand it and again with respect to contracts valued at $25,000 or more in the aggregate for a twelve-month period, whether a political subdivision corporation in which a school district is participating must comply with the contracting methods set

---

[1]Letter from Mr. Jim Nelson, Commissioner, Texas Education Agency, to Honorable John Cornyn, Texas Attorney General, at 1 (Oct. 9, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

forth in section 44.031 of the Education Code when it acts as the school district's agent. *See id.*; Request Letter, *supra* note 1, at 1. We do not address this question, having concluded that a school district may not participate in a political subdivision corporation.

Your predecessor specifically asked two questions:

> 1. May the board of trustees of a school district authorize a registered political subdivision aggregator under Section 39.3545, Texas Utility Code, to negotiate on its behalf and enter into a contract for electricity or other utility services? Please comment on the applicability, if any, of Attorney General Opinions DM-14 (1991) and JC-205 (2000).

> 2. If your answer to question 1 is "yes," must the registered political subdivision aggregator acting on behalf of the school district comply with the minimum purchasing requirements under Subchapter B, Chapter 44, Texas Education Code?

Request Letter, *supra* note 1, at 1.

Because the first question explicitly cites two of this office's previous opinions that pertain to the delegation of a school district's purchasing authority, we assume that the inquiry is whether a school district may delegate authority to negotiate or purchase electricity to a political subdivision corporation. Attorney General Opinion DM-14 concludes that a public school board is not statutorily authorized to delegate to a food service management company the purchase of food products and supplies because the purchase necessitates the exercise of "significant discretion . . . in all phases of the competitive bidding process." Tex. Att'y Gen. Op. No. DM-14 (1991) at 4. Attorney General Opinion JC-0205 concludes that under section 44.031 of the Education Code a junior college district has no authority to delegate the purchase of insurance to a designated broker of record. *See* Tex. Att'y Gen. Op. No. JC-0205 (2000) at 1. "[U]se of a designated broker of record is not authorized by section[] 44.031." *Id.* at 6. Before we focus on the delegation issue we presume has been raised, we will summarize pertinent portions of chapter 44 of the Education Code, which governs certain school district contracts, and chapter 304 of the Local Government Code, which governs political subdivision corporations.

Section 44.031 of the Education Code generally requires a school district to make each contract "valued at $25,000 or more in the aggregate for" a twelve-month period using the method "that provides the best value for the district." TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2002). A school district may select from nine listed methods:

> Except as provided by this subchapter, all school district contracts, except contracts for the purchase of produce or vehicle fuel,

valued at $25,000 or more in the aggregate for each 12-month period shall be made by the method, of the following methods, that provides the best value for the district:

(1) competitive bidding;

(2) competitive sealed proposals;

(3) a request for proposals, for services other than construction services;

(4) a catalogue purchase . . . ;

(5) an interlocal contract;

(6) a design/build contract;

(7) a contract to construct, rehabilitate, alter, or repair facilities that involves using a construction manager;

(8) a job order contract for the minor construction, repair, rehabilitation, or alteration of a facility; or

(9) the reverse auction procedure . . . .

*Id.*; *see* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 3 (stating that under section 44.031, school district "first must evaluate which of the . . . listed purchasing methods will provide the best value" and then "adhere to the procedures applicable to that purchasing method."). "To the extent of any conflict," chapter 44, subchapter B of the Education Code, of which section 44.031 is a part, "prevails over any other law relating to the purchasing of goods and services except a law relating to contracting with historically underutilized businesses." TEX. EDUC. CODE ANN. § 44.031(e) (Vernon Supp. 2002). A school district board of trustees may delegate its authority "under this subchapter regarding an action authorized or required by this subchapter to be taken by a school district to a designated person, representative, or committee," but the board may not delegate authority to take an action that "this subchapter" authorizes or requires the board of trustees to take. *Id.* § 44.0312.

We consider here only school district contracts valued at $25,000 or more in the aggregate for a twelve-month period. Chapter 44, subchapter B of the Education Code pertains only to school district contracts valued at more than $10,000. *See id.* §§ 44.031, .033. Section 44.031 applies to contracts "valued at $25,000 or more in the aggregate for [a twelve]-month period." *Id.* § 44.031(a). Section 44.033 applies to the purchase of "personal property . . . if the value of the items is at least

$10,000 but less than $25,000, in the aggregate, for a [twelve]-month period." *Id.* § 44.033(a). Because the purchase of electricity is not personal property, we do not consider section 44.033 of the Education Code. *See id.* § 44.033(a); *see also* Tex. Att'y Gen. Op. No. DM-347 (1995) at 5 (discussing meaning of "personal property").

Section 304.001(b) of the Local Government Code permits political subdivisions to aggregate to negotiate the purchase of or to purchase electricity:

> A political subdivision may join with another political subdivision or subdivisions to form a political subdivision corporation or corporations to act as an agent to negotiate the purchase of electricity, or likewise aid or act on behalf of the political subdivisions for which the corporation is created, with respect to their own electricity use for their respective public facilities.

TEX. LOC. GOV'T CODE ANN. § 304.001(b) (Vernon Supp. 2002). Section 304.001(d) authorizes a political subdivision corporation to "negotiate on behalf of its incorporating political subdivisions for the purchase of electricity, make contracts for the purchase of electricity, purchase electricity, and take any other action necessary to purchase electricity for use in the public facilities of the political subdivision or subdivisions represented by the political subdivision corporation." *Id.* § 304.001(d). For the purposes of subsection (d), "'electricity' means electric energy, capacity, energy services, ancillary services, or other electric services for retail or wholesale consumption by the political subdivisions." *Id.* Section 304.001 specifically defines the term "political subdivision" to mean "a county, municipality, hospital district, or any other political subdivision receiving electric service from an entity that has implemented customer choice, as defined in Section 31.002, Utilities Code." *Id.* § 304.001(a); *see also* TEX. UTIL. CODE ANN. § 31.002(4) (Vernon Supp. 2002) (defining "customer choice" as retail customer's freedom to purchase electric services, "either individually or through voluntary aggregation with other retail customers, from the provider or providers of the customer's choice and to choose among various fuel types, energy efficiency programs, and renewable power suppliers."). Finally, section 304.001 permits a political subdivision corporation to recover expenses by charging the incorporating political subdivisions dues or "an aggregation fee charged per kilowatt hour, or a combination of" dues and an aggregation fee. TEX. LOC. GOV'T CODE ANN. § 304.001(e) (Vernon Supp. 2002).

A political subdivision corporation formed under section 304.001 of the Local Government Code is a "political subdivision aggregator" that must register with the Public Utility Commission of Texas under section 39.3545 of the Utilities Code before it may provide "aggregation services in the state." TEX. UTIL. CODE ANN. § 39.3545(a) (Vernon Supp. 2002); *see also id.* § 11.003(4) (defining "Commission"). The section defines the term "political subdivision aggregator":

> In this section, "political subdivision aggregator" means a person or political subdivision corporation authorized by two or more

> political subdivision governing bodies to join the bodies into a single purchasing unit or multiple purchasing units to negotiate the purchase of electricity from retail electric providers for the facilities of the aggregated political subdivisions or aggregation by a person or political subdivision under Chapter 304, Local Government Code.

*Id.* § 39.3545(b); *see also* TEX. LOC. GOV'T CODE ANN. § 304.002(a) (Vernon Supp. 2002) (relating to powers of "political subdivision aggregator").

The first question explicitly cites section 39.3545 of the Texas Utility Code, but chapter 304 of the Local Government Code appears more relevant to this issue. *See* Request Letter, *supra* note 1, at 1; *see also* TEX. UTIL. CODE ANN. § 39.3545 (Vernon Supp. 2002). While section 39.3545 of the Utility Code only requires a political subdivision aggregator to register with the Public Utility Commission of Texas before it attempts to provide aggregation services, *see* TEX. UTIL. CODE ANN. § 39.3545(a) (Vernon Supp. 2002), the formation of a political subdivision aggregator, or "political subdivision corporation," as it is also called, is governed by chapter 304 of the Local Government Code, *see* TEX. LOC. GOV'T CODE ANN. §§ 304.001-.002 (Vernon Supp. 2002).

We conclude, for several reasons, that a school district may not participate in a political subdivision corporation created under section 304.001 of the Local Government Code if the value of the electricity to be purchased is estimated to be $25,000 or more in the aggregate for a twelve-month period.

First, section 44.031 of the Education Code does not expressly include participation by a school district in a political subdivision corporation as an available purchasing method. In previous opinions, this office has explained that section 44.031 of the Education Code, which was first adopted in 1995, establishes an exclusive "list of permissible purchasing methods for contracts over a certain aggregate yearly value." Tex. Att'y Gen. Op. No. JC-0205 (2000) at 6; *see* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2425-26. Attorney General Opinion JC-0205 opines that a school district may not procure insurance using a designated broker of record because it is not a purchasing method that section 44.031 lists. *See* Tex. Att'y Gen. Op. No. JC-0205 (2000) at 6.

Second, a school district's participation in a political subdivision corporation does not fit within any of the nine types of contracts expressly listed in section 44.031. Attorney General Opinion JC-0037 concludes that a school district may purchase goods using a cooperative purchasing program under chapter 271, subchapter F of the Local Government Code, if purchases made thereby represent the best value, despite the fact that a cooperative purchasing program is not included in section 44.031's list of permissible purchasing methods. *See* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 8. According to the opinion, an agreement to participate in a local cooperative purchasing program under chapter 271, subchapter F of the Local Government Code is a kind of interlocal contract, which is explicitly listed as a permissible purchasing method in section

44.031(a)(5). *See* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 9. Moreover, as we explain *infra*, the statute providing for cooperative purchasing programs expressly includes school districts in its list of local governments that may participate. *See* TEX. LOC. GOV'T CODE ANN. § 271.101(2) (Vernon 1999).

Participating in a political subdivision corporation organized under section 304.001 of the Local Government Code, by contrast, does not involve an interlocal contract as permitted by section 44.031(a)(5) of the Education Code. Of the nine permissible purchasing methods listed in section 44.031, the only possible option we see is the interlocal contract listed in subsection (a)(5). *See* TEX. EDUC. CODE ANN. § 44.031(a)(5) (Vernon Supp. 2002). We presume for the purpose of this opinion that forming a political subdivision corporation involves the use of contracts between the participating political subdivisions to, for example, establish dues or fees assessed for the purchase of electricity. *See* TEX. LOC. GOV'T CODE ANN. § 304.001(e) (Vernon Supp. 2002) (permitting political subdivision corporation to assess dues, aggregation fees, or both). Nevertheless, section 44.031(a)(5) refers only to interlocal cooperation contracts entered under chapter 791 of the Government Code. *See* Tex. Att'y Gen. Op. No. DM-418 (1996) at 2-3 n.2 (defining "interlocal contract" in section 44.031 of the Education Code as one formed consistently with chapter 791 of the Government Code); *see also* TEX. GOV'T CODE ANN. § 791.003(2) (Vernon Supp. 2002) (defining "interlocal contract" as "contract or agreement made under this chapter"). Under chapter 791, an interlocal cooperation contract may be only a contract between local governments to perform a governmental function or service that "each party to the contract is authorized to perform individually." *Id.* § 791.011(c)(2); *see also id.* § 791.011(a). Because a school district is not individually authorized to perform the services of a political subdivision corporation, it does not appear that a contract entered in the formation of a political subdivision corporation under section 304.001 of the Local Government Code is an interlocal contract permitted by chapter 791 of the Government Code.

Third, in our opinion, a school district may not use a purchasing method provided by a statute outside of the Education Code that is not expressly listed or included within those methods listed in section 44.031 unless the statute explicitly permits school districts to do so. Section 44.031 provides an exclusive list of "permissible purchasing methods for contracts over a certain aggregate yearly value." Tex. Att'y Gen. Op. No. JC-0205 (2000) at 6. Section 44.031(e) further directs that chapter 44, subchapter B of that code "prevails over any other law relating to the purchasing of goods and services" to the extent of any conflict. TEX. EDUC. CODE ANN. § 44.031(e) (Vernon Supp. 2002). For example, although a cooperative purchasing program created under chapter 271, subchapter F of the Local Government Code is not expressly included in section 44.031's list of permissible purchasing methods, *see* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 8, section 271.101 specifically lists a school district as a type of local government that may participate. *See* TEX. LOC. GOV'T CODE ANN. § 271.101(2) (Vernon 1999). Section 271.102 of the Local Government Code authorizes a "local government [to] participate in a cooperative purchasing program with another local government or a local cooperative organization." *Id.* § 271.102(a). Section 271.101(2) specifically defines the term "local government" to include a "school district." *Id.* § 271.101(2). In addition,

the cooperative-purchasing-program statute expressly provides that "[a] local government that purchases goods or services" through a cooperative purchasing program "satisfies any state law requiring the local government to seek competitive bids for the purchase of the goods or services." *Id.* § 271.102(c). Thus, as Attorney General Opinion JC-0037 concludes, a school district may participate in a cooperative purchasing program. *See* Tex. Att'y Gen. Op. No. JC-0037 (1999) at 9; *see also* TEX. EDUC. CODE ANN. § 44.031(a)(5) (Vernon Supp. 2002).

Chapter 304 of the Local Government Code, on the other hand, does not expressly include a school district in the definition of "political subdivisions" that are authorized to participate in a political subdivision corporation, as we believe it must do to overcome section 44.031 of the Education Code: "In this chapter, 'political subdivision' means a county, municipality, hospital district, or any other political subdivision receiving electric service from an entity that has implemented customer choice . . . ." *See* TEX. LOC. GOV'T CODE ANN. § 304.001(a) (Vernon Supp. 2002). Thus, with respect to a contract valued at $25,000 or more in the aggregate for a twelve-month period, a school district must comply with section 44.031 of the Education Code in the absence of express inclusion within the definition of "political subdivision."

It has been suggested that section 304.001 of the Local Government Code, as a more specific, recent enactment, prevails as an exception to section 44.031.[2] Where a general provision and specific provision conflict irreconcilably, the specific provision "prevails as an exception to the general provision, unless the general provision" was enacted later "and the manifest intent is that the general provision prevail." TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998). Initially, we do not necessarily agree that section 304.001 is more specific than section 44.031. Certainly, section 304.001 relates more specifically to the purchase of electricity, but it relates generally to all political subdivisions. *See* TEX. LOC. GOV'T CODE ANN. § 304.001(b) (Vernon Supp. 2002). By contrast, section 44.031 relates more specifically to the contracts of school districts, although it applies generally to all of a school district's contracts that meet the value prerequisite. *See* TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2002). More importantly, given that section 44.031(e) expressly provides that section 44.031 prevails over any other law relating to contracts valued at more than $25,000 in the aggregate for a twelve-month period, we believe that any exception to section 44.031 must be express. As we have shown, section 304.001 of the Local Government Code does not expressly provide an exception to section 44.031 of the Education Code.

Finally, because a school district lacks express authority to participate in a political subdivision corporation with respect to a contract valued at $25,000 or more in the aggregate for a twelve-month period, it may not delegate any authority to such a corporation under section 44.0312 of the Education Code. *See* TEX. EDUC. CODE ANN. § 44.0312(a) (Vernon Supp. 2002). A school district's board of trustees may delegate only that authority that a school district is required or authorized to exercise. *See id.*

---

[2]*See* Memorandum from Ray Martinez, Canty & Hanger, Roan & Autrey, L.L.P., representing Texas CUC Aggregation Project, Inc., to Don Lee, at 4 (July 24, 2001) (on file with Opinion Committee).

Given our conclusion that section 44.031 of the Education Code does not permit a school district to participate in a political subdivision corporation formed under section 304.001 of the Local Government Code, we do not consider the second question: whether the political subdivision corporation must comply with "the minimum purchasing requirements" under chapter 44, subchapter B of the Education Code. *See* Request Letter, *supra* note 1, at 1.

## S U M M A R Y

       With respect to a contract valued at $25,000 or more in the aggregate for a twelve-month period, a school district may not participate in a political subdivision corporation established under section 304.001 of the Local Government Code. *See* TEX. EDUC. CODE ANN. § 44.031(a) (Vernon Supp. 2002); TEX. LOC. GOV'T CODE ANN. § 304.001(b), (d) (Vernon Supp. 2002).

                    Yours very truly,

                    JOHN CORNYN
                    Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee